JOHN KELLY et al. v. THE LYNCHBURG AND DURHAM RAIL-
ROAD CO. et al.

*Arbitration and Award—Compensation—Pleading—Proof—
Practice.*

1. Though the parties to an arbitration agree that the arbitrators shall
fix their own compensation, yet upon a proper suggestion that it
is extortional or excessive, it becomes the duty of the Judge to
hear, and, if necessary, to pass upon the question thus raised.

2. When, upon the coming in of the award, the Court ordered notices to
issue to the arbitrators to file itemized accounts of the time
engaged and expenses incurred by each, together with the value
of their services, and in response to this order such accounts were
filed, to which the defendants formally excepted: *Held*, (1) it is
too late to object to the order; (2) the ruling of the Court that it
had "no power to consider the evidence in the absence of sus-
tained proof or allegation, or some affidavit of the party setting
forth fraud, collusion, conspiracy or unfairness," was error.

3. The Court has power to fix the compensation of its arbitrators when
it is not agreed upon, to cut it down if it is excessive, and this in
the absence of formal allegation and proof.

SHEPHERD, J., dissented.

This was a MOTION to revise and reduce the compensation
of arbitrators, heard at the October Term, 1891, of DURHAM
Superior Court, by *Winston, J.*

The following is the ruling and order:

"The Court being of the opinion that the Court has no
power to consider the evidence in the absence of sustained
proof or allegation, or of some affidavit of a party setting forth
and specifically charging fraud, collusion, conspiracy or un-
fairness, refuses said motion."

The defendant excepted. Judgment for the arbitrators.

The other facts may be gathered from the opinion of the
Court.

*Mr. W. W. Fuller*, for arbitrators.
*Mr. W. A. Guthrie*, for defendants.

AVERY, J.: If the parties had not incorporated into the agreement to submit to arbitration a provision that the arbitrators might fix their own compensation, the duty of determining what would be a just allowance for the service rendered by them, and each of them, would have devolved upon the Court, and the Judge might have heard evidence in case of dispute in order to arrive at a fair estimate of the value of the work done and the expense incurred in performing it. *Stevens* v. *Brown*, 82 N. C., 463; *Griffin* v. *Hadley*, 8 Jones, 82.

Where they assume the right to determine their compensation without the assent of the parties, that portion of the report will not be sustained, and if separate from other matters disposed of, may be set aside, while the award in other respects may be enforced as a rule of Court. *Stevens* v. *Brown, supra; Knight* v. *Holden*, 104 N. C., 107.

The truth of the principle embodied in the old maxim, " *Nemo debet esse judex id propria sua causa*," is self-evident. *White* v. *Connelly*, 105 N. C., 70; *Freeman* v. *Person*, 106 N. C., 251. While it is admitted that the parties to an action may, by express agreement, clothe arbitrators with power to fix the amount of their compensation, the law attaches, by implication, the condition that the allowance shall not be unreasonable, and upon a proper suggestion that it is extortionate or excessive, it becomes the duty of the trial Judge, before giving judgment to enforce the award, as a rule of Court, to hear evidence, if necessary, and pass upon the question thus raised. The motion for judgment upon an award, which is by the terms of the submission to be enforced as a rule of Court, may be resisted upon any ground that impeaches its validity generally, or, where it is separable,

the validity of a portion of the findings. *Metcalf* v. *Guthrie*, 94 N. C., 447; *Cowan* v. *McNeely*, 10 Ired., 5.

It has been the practice in our Courts to attack awards for errors of law, apparent from the record, by filing exceptions. *Long* v. *Fitzgerald*, 97 N. C., 39; *Duncan* v. *Duncan*, 1 Ired., 466.

It appears, upon an inspection of the charges of two of the arbitrators (the claim of the third having been compromised pending the dispute), that they claim each about fifty dollars per diem for every day on which they were actually sitting together, with all expenses for board and transportation; and, moreover, one account contains a charge for one day at the same rate, which was spent previous to the hearing in conference with attorneys of the plaintiff, who had chosen him. The aggregate of one of the contested accounts is $1,220.50; of the other, $982.21.

Upon the coming in of the award at the March Term, 1891, Judge Boykin, who then presided, ordered that notice issue to Lutz and Graham to file " verified itemized accounts of the time engaged and expenses incurred by each of them respectively in the trial of this cause, together with the value of their services." To this order no exception was entered, and in response to it the accounts were filed, to which the defendants have formally excepted. It is too late to object to the order made at the March Term, 1891.

The Judge who passed upon the exceptions to the accounts filed by the two arbitrators rested his ruling upon the ground that he had "no power to consider the evidence in the absence of sustained proof, or allegation, or of some affidavit of a party setting forth and specifically charging fraud, collusion, conspiracy or unfairness." The Court below adopted the language used by Morse (p. 596), and quoted from an opinion of the Supreme Court of Maine. But it must be remembered that the question under discussion there was not what was the proper method of attacking an allowance

110 — 28

of fees, made by two or three arbitrators, each for himself, according to his own estimate of the value of his own services, but how the joint work of all the arbitrators, as to which there might be collusion or conspiracy, could be impeached for fraud. His Honor adopted the English rule, which has been followed by only a portion of the American Courts (Morse on Arbitration, p. 620); but admitting, for the sake of argument, that the action of the arbitrators as to all issues upon which they passed as a body could in England have been impeached only by a bill in equity, and that under our Code practice we are bound to preserve the principle by requiring that the equity shall be alleged in some proper way, it does not follow that the account for services, which the parties may have consented that each arbitrator shall make out for himself, shall be attacked only in the same manner. In the absence of such agreement the quantum of fees would have been determined at the discretion of the Court, while, if the parties had not agreed upon the trial by arbitrators of the matters in controversy between them, the issues of fact raised by the pleadings would have been settled by the jury. An excessive charge of a single arbitrator might, it seems to us, have been corrected under the former practice without resorting to a court of equity, whatever might have been the rule as to collusive fraud. The permission to each arbitrator to make out his bill of charges is subject to the power of the Judge to resume his functions in case the license should appear to him to have been abused. It is a substitution of the arbitrator in his place, with the condition annexed that the allowance may be set aside if unreasonable. If the award is set aside for fraud, the right of trial by jury as to the issues is reinstated. If the allowance to an arbitrator is impeached as unreasonable, the effect is to restore to the Court the right to fix a reasonable compensation.

We do not concur with the Court below in the view that there must be *allegata* and *probata*, or proof sustained in any specified formal manner, before the Court can interpose to supervise an allowance of fees by the arbitrators to themselves. The amount of fees would be determined, in the absence of any agreement, by the Court, on motion, and the Judge would, in case of dispute as to the character and extent of the services, hear testimony. We see no reason why the Judge, upon suggestion by exception, or by motion, that the allowance is unfair, should not set aside an unjust allowance in the way prescribed by law for making a just one. This is in harmony with the Code, and the general trend of our new practice in dispensing with useless formality where it obstructs the administration of justice. We think that the Court was at liberty to hear any evidence offered as to the services performed, and upon that, and other material evidence, had the power to pass upon the question whether the charges made were unreasonable.

It would seem, however, that in America the jurisdiction of the courts of equity in setting aside awards has not been admitted to extend to all cases where there has been fraud in the arbitration, but it is needless to discuss that question, if we consider the compensation as a matter apart from the issues raised by the pleadings. We think that there was error in the ruling of the Court below.

SHEPHERD, J. (dissenting): I think that his Honor very properly refused to allow the award to be impeached in such a summary and informal manner. The compensation of arbitrators may be submitted to them, as well as the other matters in dispute, and their award, in this respect, is equally binding, and must be impeached in the same way.

The award in this case does not, upon its face, disclose the specific items of costs and charges as fixed by the arbitrators, and, therefore, the Court could not see that they were so unrea-

sonable as to warrant relief on the ground of fraud or oppression. In such cases the award must be impeached by an action in the nature of a bill in equity charging fraud, misconduct or other grounds of relief, and when the award is to be made a rule of Court there should be, at least, an affidavit setting forth the grounds upon which its enforcement is resisted. The fact that the arbitrators are interested in fixing their own compensation makes no difference, as it is well settled that an award will not be disturbed where parties have knowingly submitted their differences to persons interested in the matters involved. *Pearson* v. *Barringer*, 109 N. C., 398, and the authorities cited. See, also, *Fox* v. *Hazelton*, 10 Pick., 275.

The ruling of the Court below is well sustained by the case of *Blossom* v. *VanAmringe*, 63 N. C., 65, in which Chief Justice PEARSON says: "It certainly cannot be expected that the Court shall wade through all of the voluminous proceedings, accounts, time devoted to the investigation, etc., in order to determine whether the amount of compensation fixed on is too high, for the reason that the parties have agreed to leave that question to the arbitrators, and they are bound by it, except there be an allegation of unfairness so well sustained as to induce the Court to interfere in order to prevent fraud and oppression by an abuse of power confided to the arbitrators." See, also, Adam's Equity, 192. To set aside an award upon a motion without affidavit, or upon a mere exception, is, I think, something new in the practice. As to the fixing of compensation, it reduces the determination of the arbitrators to but little more dignity than an ordinary bill of costs, and I cannot see how this is authorized by the Code of Civil Procedure. His Honor seems to have been of the opinion that the new *procedure* was designed simply for the purpose of enforcing existing principles of law and equity, and not to change them in any respect. Such, also, seems to have been the view of this Court from the adoption of *The Code* to the present time. *Parsley* v. *Nicholson*, 65 N. C.,

207; *Oates* v. *Gray*, 66 N. C., 442; *Katzenstein* v. *Railroad Co.*, 84 N. C., 688, and numerous other cases. The impeachment of an award, like the correction of a deed, is governed by certain *principles*, and is by no means a simple matter of *practice.*

I can conceive of no greater source of confusion than the idea that the Code of Civil Procedure warrants any departure from well settled principles, and that in some vague and indefinite way it is to be made a refuge for all of the "hard cases," at the sacrifice of that certainty and uniformity which constitute the beauty and strength of every enlightened system of jurisprudence

I think that the ruling of the Court below should be affirmed, and that the impeaching matter should at least be supported by affidavit.

*Per curiam.*                                               Error.